## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THOMAS CRAWFORD, | : | |
| | : | |
| Plaintiff, | : | Civ. Action No. 18-1735(FLW) |
| | : | |
| v. | : | |
| | : | |
| SCO B. WHEELER et al., | : | **OPINION** |
| | : | |
| Defendants. | : | |
| | : | |

**FREDA L. WOLFSON, Chief U.S.D.J.:**

Plaintiff Thomas Crawford ("Crawford" or "Plaintiff") is a state prisoner incarcerated at New Jersey State Prison, in Trenton, New Jersey.  He is proceeding *pro se* with this civil rights action filed, *inter alia*, under 42 U.S.C. § 1983.  Presently before the Court is a motion for summary judgment by defendants SCO B. Wheeler ("Wheeler"), Lt. Bundy, SCO E. Perez ("Perez"), SCO G. Christmas, COR J. Leek ("Leek"), COR Patrick Jenson ("Jenson"), Sgt. S. Patterson ("Patterson"), Sgt. DeFazio ("DeFazio"), the State of New Jersey, and the New Jersey Department of Corrections ("NJDOC") (collectively, "Movants") pursuant to Federal Rule of Civil Procedure 56.  For the reasons explained in this Opinion, the motion for summary judgment is granted as to the federal claims brought pursuant to 42 U.S.C. § 1983.  The Court dismisses the remaining claims as to the State of New Jersey, the NJDOC, and the unserved defendants pursuant to its screening authority, declines supplemental jurisdiction over the state law tort claims, and remands this matter to state court.

## I.   **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

### a.  **Factual Background**

Plaintiff Thomas Crawford, AKA Thomas Cross, is currently confined at New Jersey

State Prison ("NJSP") pursuant to a 1996 conviction in state court for murder and related

offenses.[1]  Exhibit A, Transcript of Plaintiff's Deposition, T10:8-20; *see* ECF No. 21, Amended

Complaint.  Plaintiff's civil rights action arises from the alleged confiscation and destruction of

his legal materials, which were located in the cell of Michael Martin, an inmate paralegal who is

not a Plaintiff in this matter.

It is undisputed that Martin works as a paralegal in the NJSP law library and assists

inmates with their legal challenges to their criminal convictions, among other duties.  *See* Martin

Decl. ¶¶ 4-5.  Prior to November 25, 2016, NJSP law library staff directed Martin to assist with

Plaintiff's motion for reconsideration in connection with a postconviction relief petition ("PCR")

Plaintiff filed in state court.  *See* Plaintiff's Dep., T11-12; T28:11-12; Martin Decl. ¶ 6.

According to Plaintiff, his motion for reconsideration related to the denial of a PCR in the New

Jersey Superior Court, Essex County, before the Honorable Judge Kamil.[2]  *See* T12:6-9; T24:1-

---

[1] The indictment arose from defendant's July 1995 involvement in three separate carjackings, which resulted in the killing of a retired police chief and assaults upon several elderly victims. *State v. Cross*, A-1329-12T2, 2014 WL 3763306, at *1 (N.J. Super. App. Div. Aug. 1, 2014).)

[2] Neither party provides the record of Plaintiff's prior PCR proceedings.  The Court takes judicial notice of the timeline provided by the New Jersey Appellate Division in its unpublished decision on Westlaw, as it is largely consistent with Plaintiff's deposition testimony that the Appellate Division remanded his third PCR in 2011.  *See State v. Cross*, A-1329-12T2, 2014 WL 3763306, at *1 (N.J. Super. App. Div. Aug. 1, 2014) (explaining that the appellate court "previously reversed and remanded another PCR judge's earlier order denying defendant's application for assignment of PCR counsel and his petition" (citing State v. Cross, No. A–4278–09 (App. Div. September 21, 2011)).  On remand, the PCR court denied the third PCR, and, on August 1, 2014, on appeal after remand, the Appellate Division affirmed the denial of Petitioner's third PCR as follows:

> We have carefully considered defendant's arguments and the
> applicable law, and we conclude that the arguments advanced by

2

5; T36:24-37:2; T41-44.  In his deposition, Plaintiff testified that the planned reconsideration motion was based on the fact that his third PCR counsel provided ineffective assistance for failing to address issues after the Appellate Division's remand, and for relying on a brief that Plaintiff had prepared. T19:7-12; T20:13-17; T44:22-46:16.

In order to assist Plaintiff with his motion for reconsideration, Martin had Plaintiff's personal legal materials and legal file in his cell.  *See* Martin Decl. ¶ 7.  These legal material included transcripts and a brief.  T27:22-28:10.  In his deposition, Plaintiff testified that he was given a scheduling order on the motion for reconsideration, and his deadline to file his papers was in September 2016, but he received several enlargements of time.  *See* T37:3-12.

---

defendant are without sufficient merit to warrant discussion in a written opinion. R. 2:11–3(e)(2). We affirm substantially for the reasons expressed by the PCR judge in his August 28, 2012 written opinion. We are satisfied that defendant's third petition, filed fourteen years from the date of his conviction, is clearly time-barred. R. 3:22–12. We also agree that defendant's claims of cumulative error and counsel's deficient performance are barred by Rule 3:22–4, –5, as they were raised or could have been raised on direct appeal and during his two prior PCR petitions. Even if defendant's claims were not procedurally barred, we agree with Judge Cassini that they are meritless because defendant failed to meet his burden under the second prong of the *Strickland/Fritz* test.

*State v. Cross*, 2014 WL 3763306, at *4.  The New Jersey Supreme Court denied certification on January 23, 2015.  *State v. Cross*, 220 N.J. 269 (2015).  The New Jersey's Promis Gavel system indicates that Plaintiff filed a fourth PCR in state court on or about September 22, 2015, and this fourth PCR was denied on or about January 5, 2016.  *See* New Jersey Promis Gavel System, available at https://portal.njcourts.gov/webe4/ExternalPGPA/entry.  Plaintiff testified that he filed his reconsideration motion on March 29, 2016.  *See* T43:5-19.  Thus, based on the timing and available record, it appears that Plaintiff was seeking reconsideration of the denial of his fourth PCR, which asserted ineffective assistance of his third PCR counsel; however, as explained in this Court's analysis of Plaintiff's access to the courts claim, *see infra*, Plaintiff never clarifies what specific issues his third PCR counsel failed to raise, why he and Martin believed those issues would have warranted relief in state court, or why his reconsideration motion would have been successful in light of the prior decisions denying relief on PCR.

On November 25, 2016, Defendant DeFazio directed Defendants Leek and Jenson to conduct a search of Martin's cell.[3]  Exhibit D; *See* ECF No. 21, Amended Complaint; T13:17-19.  The motive for the cell search, however, is disputed.  Plaintiff testified in his deposition that the cell search was conducted to retaliate against Martin for Martin's filing grievances against Defendant Wheeler.[4] T13:15-19; *see* ECF No. 21, Amended Complaint ¶¶ 9-18.  In a Declaration submitted with Plaintiff's opposition papers, Martin contends that his cell was searched because he acts as a prison paralegal assisting inmates and files grievances against rouge correctional officers.[5]  Martin Decl. ¶ 8.  Moving Defendants concede that Defendants Leek and Jenson conducted the search of Martin's cell, but they deny that the search was retaliatory, and they also deny that the officers confiscated or destroyed legal materials.  *See* Defendants' SOMF ¶¶ 10-12.  In their moving papers, Defendants rely on the Special Custody

---

[3] The Amended Complaint alleges that Defendant Patterson also directed the search, and that Defendant Patterson and DeFazio directed the destruction of legal material. *See* Amended Complaint at ¶¶ 31.  The Amended Complaint further alleges that Defendants Wheeler and Amato took part in the search of Martin's cell and the destruction of Plaintiff's legal materials. *See id.* at ¶¶ 26-28.  The Amended Complaint also alleges that there is a policy of encouraging retaliation and that Defendants Alaimo, Bundy, Patterson, and DeFazio failed to supervise and train Wheeler and the other officers who conducted the search.  See id. at ¶¶ 2, 34.

[4] The Amended Complaint alleges that Martin was set up on false disciplinary charges by Defendants, and, ultimately, was able to get the charges set aside and was awarded costs.  *See id.* ¶¶ 37-42.  The Amended Complaint also alleges that the Special Investigations Division ("SID") investigated the incident and determined that the supervisors violated NJDOC rules and recommended that two of the supervisors be terminated.  *See id.* ¶¶ 47-48.  None of these allegations, however, change the Court's analysis of whether Defendants violated Plaintiff's constitutional rights, and thus they are not material to the Court's decision.

[5] In his Amended Complaint, Plaintiff also alleges that his legal materials were destroyed "as a direct result of Plaintiff's constitutionally protected activity (seeking legal help and assistance from a paralegal assigned to work on his case by the New Jersey Department of Corrections)." *Id.* at ¶ 43.  As discussed below, however, there is no evidence that Plaintiff's legal materials were destroyed because he sought assistance from an inmate paralegal, and the Court is unable to credit this bare allegation at summary judgment.

Reports, which were prepared by Defendants Leek and Jensen, and contend that Martin's cell was a routine search based on having items that were potentially prohibited.  *See* Exhibit D.

After the search, Plaintiff filed grievances with the prison attempting to locate and have any legal material found in Martin's cell during the search returned to him.  T14 to 15; Exhibits B and C.  In response to Plaintiff's grievances, prison officials responded that all materials confiscated in Martin's possession were returned to Martin, and that if Plaintiff believed his property was lost or stolen, Plaintiff should submit a property claim.  Exhibit C.  Subsequently, on January 19, 2017, Plaintiff submitted an inmate property claim form to the prison, which was denied on February 27, 2017.  Prison Officials determined that there was no neglect by the prison and further found and that the prison was not responsible for paperwork given to another inmate. *See* Exhibits E and F.

On January 18, 2017, Plaintiff wrote to the Superior Court requesting the price for the lost transcripts in his criminal matter.  Exhibit G; T27:25-28:2.  On January 23, 2017, the Superior Court responded that it no longer had those transcripts in its records.[6]  Exhibit H; T28:2-3.

**b.  Procedural History**

On September 19, 2017, Crawford filed his original complaint in the Superior Court of New Jersey, Law Division, Mercer County.  Moving Defendants removed the action to this Court on February 7, 2018, and subsequently filed an Answer to the original complaint.  *See* ECF Nos. 1 & 2.  The Magistrate Judge granted Moving Defendants leave to file a motion for judgment on the pleadings, ECF Nos. 9,  and they thereafter filed a motion for judgment on the pleadings under Rule 12(c).  ECF No. 10.

---

[6] The $7,500 replacement cost for the transcripts was an estimate by Plaintiff. T29:3-6; T46:20-23.

This Court construed the original complaint to assert civil rights claims for retaliation, denial of access to the courts, and supervisory liability, under 42 U.S.C. § 1983, as well as tort claims under state law.  The Court granted the motion for judgment on the pleadings on August 9, 2019, as to the federal claims, declined supplemental jurisdiction over any potential state law claims, and provided Plaintiff with leave to submit an Amended Complaint.  *See* ECF No. 19-20.

Plaintiff filed an Amended Complaint on September 3, 2019.  ECF No. 21.  Defendants answered the Amended Complaint on or about February 20, 2020, ECF No. 25, and discovery commenced.  Plaintiff was deposed on April 28, 2021, and the Magistrate Judge directed Movants to file their dispositive motions by August 27, 2021.  *See* ECF No. 37.

Defendants subsequently filed the instant summary judgment motion.  Plaintiff submitted his opposition brief and supporting exhibits, and Defendants submitted their reply brief.  *See* ECF Nos. 38, 41, 42.  The matter is fully briefed and ready for disposition.

## II.    STANDARD OF REVIEW

Summary judgment is appropriate where the Court is satisfied that "there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).  A factual dispute is genuine only if there is "a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and it is material only if it has the ability to "affect the outcome of the suit under governing law." *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment. *Anderson*, 477 U.S. at 248. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's

evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 447 U.S. at 255)); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Curley v. Klem*, 298 F.3d 271, 276–77 (3d Cir. 2002).

The burden of establishing that no "genuine issue" exists is on the party moving for summary judgment. *Celotex*, 477 U.S. at 330. "A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial." *Gleason v. Norwest Mortg.*, Inc., 243 F.3d 130, 138 (3d Cir. 2001).

The non-moving party must present "more than a scintilla of evidence showing that there is a genuine issue for trial." *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005) (quotations omitted). Thus, there can be "no genuine issue as to any material fact," if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323; *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992).

A document filed *pro se* is to be "liberally construed" and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). In addition, when considering a motion in a *pro se* plaintiff's proceedings, a court must "apply the applicable law, irrespective of whether a *pro se* litigant has mentioned it by name." *Holley v. Dep't of Veteran Affairs*, 165 F.3d 244, 247–48 (3d Cir. 1999). Nevertheless, on a motion for summary judgment, "a *pro se* plaintiff is not relieved of his obligation under

Rule 56 to point to competent evidence in the record that is capable of refuting a defendant's motion for summary judgment." *Ray v. Fed. Ins. Co.*, No. 05-2507, 2007 WL 1377645, at *3 (E.D. Pa. May 10, 2007). "[M]erely because a non-moving party is proceeding *pro se* does not relieve him of the obligation under Rule 56(e) to produce evidence that raises a genuine issue of material fact." *Boykins v. Lucent Techs., Inc.*, 78 F. Supp.2d 402, 408 (E.D. Pa. 2000).

## III.   ANALYSIS

### a.  Summary Judgment Motion

The Court once again construes Plaintiff to raise § 1983 claims for retaliation in violation of the First Amendment, denial of access to the courts in violation of the First and Fourteenth Amendments, supervisory liability, and state law tort claims. The Court begins with the federal claims.

To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States and that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011); *see also West v. Atkins*, 487 U.S. 42, 48 (1988).

Because Plaintiff asserts that Moving Defendants retaliated against Martin for Martin's First Amendment activities, the Court begins with the issue of whether Plaintiff has standing to bring his First Amendment retaliation claims.[7] Although Defendants do not raise any prudential limitations regarding Plaintiffs' standing, the Court has an independent obligation to examine its

---

[7] There are three types of standing: statutory, constitutional, and prudential. "Statutory standing is simply statutory interpretation: the question it asks is whether Congress has accorded this injured plaintiff the right to sue the defendant to redress his injury." *Graden v. Conexant Sys. Inc.*, 496 F.3d 291, 295 (3d Cir.2007) (emphasis in original). "Constitutional and prudential standing are about, respectively, the constitutional power of a federal court to resolve a dispute and the wisdom of so doing." *Id; see also Allen v. Wright*, 468 U.S. 737, 751 (1984). As explained in this section, Plaintiff lacks prudential standing to bring the First Amendment retaliation claims.

own jurisdiction and address such issues *sua sponte* at any stage of the proceedings. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 230–31 (1990)).

"Article III ... gives the federal courts jurisdiction over only 'cases and controversies,' and the doctrine of standing serves to identify those disputes which are appropriately resolved through the judicial process." *Whitmore v. Arkansas*, 495 U.S. 149, 154-55 (1990). The Standing doctrine distinguishes between "jurisdictional" and "prudential" rules of standing. The three jurisdictional rules of standing sketch out the minimum requirements for a "case or controversy" under Article III; they are "injury in fact ... causation, and redressability." *Id.* at 155. By contrast, the prudential rules of standing are judicially created doctrines based on policy judgments about the proper role of the courts.

One such rule is that a litigant "generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975). In view of this rule, "courts have held consistently that an inmate does not have standing to sue on behalf of his fellow prisoners."[8] *Weaver v. Wilcox*, 650 F.2d 22, 27 (3d Cir. 1981) ("[A]n inmate does not have standing to sue on behalf of his fellow prisoners. Rather, the prisoner must allege a personal loss and seek to vindicate a deprivation of his own constitutional rights.") (Citations omitted) (collecting cases); *see also McGowan v. Maryland*, 366 U.S. 420, 429 (1961)(citing *United States v. Raines*, 362 U.S. 17, 22 (1960) ("[A] litigant may only assert <u>his own</u> constitutional rights or immunities.") (emphasis added).

Here, Plaintiff lacks prudential standing to bring the First Amendment retaliation claims against Moving Defendants, as he improperly asserts Martin's constitutional right to be free of

---

[8] *Wilcox* involved a plaintiff who sought injunctive relief with respect to conditions of confinement after he was released from that facility in order to benefit other inmates. The principle that a plaintiff may only vindicate his own constitutional rights applies equally here.

retaliation based on Martin's protected activities (i.e., filing of grievances and/or his assigned role as a prison paralegal). Martin is not a plaintiff in this action. And, as noted by Defendants, there is no evidence whatsoever that Defendants confiscated Plaintiff's legal materials from Martin's cell or destroyed those items to retaliate <u>against Plaintiff</u> for exercising his First Amendment rights to file grievances, to challenge his criminal conviction, or because he sought the assistance of an inmate paralegal, as Plaintiff briefly contends in his Amended Complaint. Because Plaintiff lacks prudential standing to bring First Amendment retaliation claims asserting violations of Martin's constitutional rights, the Court lacks subject matter jurisdiction over Plaintiff's First Amendment retaliation claims.

Even if the Court had subject matter jurisdiction over Plaintiff's First Amendment retaliation claims, those claims would also fail on the merits. "In order to establish illegal retaliation for engaging in protected conduct, [Plaintiff] must prove that: (1) his conduct was constitutionally protected; (2) he suffered an adverse action at the hands of prison officials; and (3) his constitutionally protected conduct was a substantial or motivating factor in the decision to discipline him. *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016); *see also Brant v. Varano*, 717 F. App'x 146, 149 (3d Cir. 2017); *Rauser v. Horn*, 241 F.3d 330, 333–34 (3d Cir. 2001). "'[G]overnment actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right.'" *Allah v. Seiverling*, 229 F.3d 220, 224–25 (3d Cir. 2000) (alteration in original) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 386 (6th Cir. 1999)); *see also Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003).

Once a plaintiff has shown evidence of protected conduct and an adverse action, the question becomes showing a causal link between the two. *See Rauser*, 241 F.3d at 333. At that

stage, the plaintiff first bears the burden to show that the protected conduct was a substantial or motivating factor underlying the adverse action, and the burden then shifts to the defendant to show that it would have taken the same action regardless of the plaintiff's protected conduct. *Id.* Where a causal link cannot be shown with direct evidence, a plaintiff may try to satisfy that burden by demonstrating "(1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Watson*, 834 F.3d at 422.

Here, even if the Court assumes that Plaintiff was engaged in protected conduct and suffered an adverse action, he provides <u>no evidence</u> of causal connection.  That is, there is no evidence showing that any of the Moving Defendants sought to retaliate <u>against Plaintiff for his protected activities</u> when they searched Martin's cell and confiscated and/or destroyed Plaintiff's legal papers as part of that search.  To the extent the Defendants were retaliating against Martin for his First Amendment activities, *i.e.*, Martin's filing of grievances against Wheeler and/or assisting inmates as part of his duties as a prison paralegal, Martin is the only litigant who can seek redress for those alleged violations under § 1983.  As such, Moving Defendants are entitled to summary judgment on the merits of Plaintiff's First Amendment retaliation claims even if Plaintiff has standing to assert those claims.

Moving Defendants are also entitled to summary judgment on Plaintiff's access to the courts claims.  "Under the First and Fourteenth Amendments, prisoners retain a right of access to the courts."  *Monroe v. Beard*, 536 F.3d 198, 205 (3d Cir. 2008) (citing *Lewis v. Casey*, 518 U.S. 343, 346 (1996)).  There are two (2) general categories of actionable access to the courts claims. *See Christopher v. Harbury*, 536 U.S. 403, 413 (2002).  "In the first are claims that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present

time." *Id.* The second category "do[es] not look forward to a class of future litigation, but backward to a time when specific litigation ended poorly, or could not have commenced, or could have produced a remedy subsequently unobtainable." *Id.*

"Where prisoners assert that defendants' actions have inhibited their opportunity to present a past legal claim, they must show (1) that they suffered an 'actual injury' – that they lost a chance to pursue a 'nonfrivolous' or 'arguable' underlying claim; and (2) that they have no other 'remedy that may be awarded as recompense' for the lost claim other than in the present denial of access suit." *Id.* (citing *Christopher*, 536 U.S. at 415). Even at the pleading stage, "[t]he complaint must describe the underlying arguable claim well enough to show that it is 'more than mere hope,' and it must describe the 'lost remedy.'" *Monroe*, 536 F.3d at 205-06. In *Monroe*, for instance, "the defendants confiscated all of the plaintiffs' contraband and non-contraband legal materials, including their legal briefs, transcripts, notes of testimony, exhibits, copies of reference books, treatises, journals, and personal handwritten notes," but dismissal of the Complaint was affirmed because the plaintiffs "did not specify facts demonstrating that the claims were nonfrivolous" and also failed to allege that they had no other remedy. Indeed, it is well-settled that the lack of a meritorious underlying claim precludes a plaintiff from subsequently pursuing a constitutional denial of access to courts claim. *See, e.g., Prater v. City of Philadelphia*, 542 F. App'x. 135, 137 (3d Cir. 2013); *Allen v. Ripoll*, 150 F. App'x. 148, 150 (3d Cir. 2005).

At summary judgment, the allegations in a plaintiff's complaint do not create a dispute as to material issues of fact. *Orsatti v. N. J. State Police*, 71 F.3d 480, 484 (3d Cir. 1995) ("[A] plaintiff cannot resist a properly supported motion for summary judgment merely by restating the allegations of his complaint, but must point to concrete evidence in the record that supports each

and every essential element of his case.").  Here, Plaintiff has not met his burden to show that his motion for reconsideration before the state PCR had merit or included an underlying "arguable" or "nonfrivolous" claim.  Indeed, other than generalized statements about the alleged ineffectiveness of his PCR counsel, Petitioner provides no evidence that he lost the chance to pursue a nonfrivolous or arguable claim in his motion for reconsideration.  Nor has he explained how the lost legal materials prevented him from presenting that claim to the state court on reconsideration.

Finally, as argued by Moving Defendants, reconsideration is a high standard.  Under New Jersey law, reconsideration should be granted only in those rare instances when a court's decision is based upon a profoundly incorrect or irrational basis, or the court "either did not consider, or failed to appreciate the significance of probative, competent evidence."  *Fusco v. Bd. of Educ. of City of Newark*, 349 N.J. Super. 455, 462 (App. Div. 2002) (quoting *D'Atria v. D'Atria*, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).  Plaintiff has not provided any evidence that his motion for reconsideration would have met this high bar for relief.

For all these reasons, Moving Defendants are entitled to summary judgment on Plaintiff's access to the courts claims.

Moving Defendants are also entitled to summary judgment on the supervisory liability claims.  In his Amended Complaint, Plaintiff asserts there is a policy, practice, or custom of encouraging and permitting staff to engage in retaliation against inmates who exercise their constitutional rights.  Plaintiff also alleges that Defendants Alaimo, Bundy, Patterson, and DeFazio failed to intervene in the search of Martin's cell and failed to supervise and train the officers who conducted the search.

With respect to supervisors, the Third Circuit has recognized that "there are two theories of supervisory liability, one under which supervisors can be liable if they established and maintained a policy, practice or custom which directly caused the constitutional harm, and another under which they can be liable if they directly participated in violating plaintiff's rights, directed others to violate them, or, as the persons in charge, had knowledge of and acquiesced in their subordinates' violations."  *Santiago v. Warminster Twp.*, 629 F.3d 121, 129 n.5 (3d Cir. 2010) (quotation and alteration marks omitted); *Parkell v. Danberg*, 833 F.3d 313, 330 (3d Cir. 2016); *see also A.M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Detention Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004).

To the extent Plaintiff's claims of supervisory liability are based on Defendants Alaimo, Bundy, Patterson, and DeFazio's direct participation in their subordinates alleged wrongs, those claims fail because there is no underlying constitutional violation.  *See Santiago,* 629 F.3d at 130 (reasoning that a claim for supervisory liability based on direct participation "necessarily includes as an element an actual violation at the hands of subordinates"); *see also Talley v. Varner*, 786 F. App'x. 326, 329 (3d Cir. 2019) (same).

The failure to supervise claims fail for similar reasons.  In order to survive summary judgment on a supervisory liability claim,

> the plaintiff must identify a supervisory policy or procedure that the supervisor defendant failed to implement, and prove that: (1) the policy or procedures in effect at the time of the alleged injury created an unreasonable risk of a constitutional violation; (2) the defendant-official was aware that the policy created an unreasonable risk; (3) the defendant was indifferent to that risk; and (4) the constitutional injury was caused by the failure to implement the supervisory procedure.

*Barkes v. First Correctional Medical, Inc.*, 766 F.3d 307, 330 (3d Cir. 2014).  Here, there is no evidence regarding deficiencies in the policies or procedures that were in effect at the time of the

alleged search of Martin's cell or that the supervisory Defendants were aware that such deficiencies existed.  And in a recurrent theme, Plaintiff has not shown that <u>his constitutional rights</u> were violated by the failure to implement supervisory procedures to stop retaliation against other inmates.  Although Plaintiff allegedly lost his legal materials during the search of Martin's cell, that fact does not rise to the level of a constitutional violation in this case.[9]

### b.   Claims Subject to Dismissal under 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c), and the State Law Claims

To the extent Plaintiff's Complaint realleges § 1983 claims against the State of New Jersey and the NJDOC, those claims are dismissed pursuant to the Court's screening authority under 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c).[10]  There are also three defendants named in Crawford's Amended Complaint who have not appeared in this action:  Major Steve Alaimo, SCO S. Clifton, and SCO Amtao.  The Court's analysis as to Moving Defendants applies with equal force to the § 1983 claims asserted against these non-appearing defendants.  The Court therefore exercises it screening authority, under 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c), to dismiss the § 1983 claims as against those defendants.  *See Slater v. Skyhawk Transp., Inc.*, 187 F.R.D. 185, 202 (D.N.J. 1999) ("'It is well established that, even if a party does not make a

---

[9] Plaintiff has never framed the loss and/or destruction of his legal materials as a violation of due process, presumably because that type of claim is barred unless Plaintiff was deprived of any meaningful post-deprivation remedy.  "[A]n unauthorized intentional deprivation of property" by prison officials does not violate the Due Process Clause "if a meaningful postdeprivation remedy for the loss is available." *Hudson v. Palmer*, 468 U.S. 517, 533 (1984)(citing *Parratt v. Taylor*, 451 U.S. 527(1981)).  Pre-deprivation notice is not constitutionally required. *See id.*  The Third Circuit has consistently held that the availability of a prison's grievance procedure is a meaningful postdeprivation remedy. *See, e.g., Tillman v. Lebanon Cty. Corr. Fac.*, 221 F.3d 410, 422 (3d Cir. 2000); *Aulisio v. Chiampi*, 765 F. App'x. 760, 764 (3d Cir. 2019)(same).

[10] Section 1983 permits actions against a "person." 42 U.S.C. § 1983. "[A] state is not a 'person' within the meaning of § 1983 . . . ." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65–66 (1989).

formal motion to dismiss, the court may, *sua sponte*, dismiss the complaint where the inadequacy of the complaint is clear.'" (quoting *Michaels v. New Jersey*, 955 F. Supp. 315, 331 (D.N.J. 1996))).

Finally, to the extent that Crawford seeks to allege tort claims under state law, the Court declines to exercise supplemental jurisdiction over such claims in light of the dismissal of his § 1983 claims. *Hedges v. Musco*, 204 F.3d 109, 123 (3d Cir. 2000) ("[W]here the claim over which the district court has original jurisdiction is dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so." (internal quotation marks omitted)).

## IV.   <u>CONCLUSION</u>

Moving Defendants' motion for summary judgment is GRANTED, and Crawford's claims for retaliation, denial of access to the courts, and supervisory liability under 42 U.S.C. § 1983 are dismissed <u>with prejudice</u> as to the Moving Defendants. The § 1983 claims against the State of New Jersey, NJDOC, and the non-appearing individual Defendants are likewise dismissed <u>with prejudice</u> pursuant to the Court's screening authority under 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(c). The Court declines to exercise supplemental jurisdiction over any remaining state tort law claims, *see* 28 U.S.C. § 1367(c)(3), against any and all defendants named in this case, and remands this matter to the Superior Court of New Jersey, Law Division, Mercer County. The Court also directs the Clerk of the Court to mark this matter as CLOSED. An appropriate order follows.

/s/ Freda L. Wolfson
FREDA L. WOLFSON
U.S. Chief District Judge

DATED:  March 21, 2022.